UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANICE L. ROEDER,

    Plaintiff,

          v.

DRS. BATTISTONI & BEAM, LTD.;
RICHARD A. BATTISTONI,

    Defendants.

No. 11 C 4111
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

BACKGROUND

This is an Age Discrimination in Employment ("ADEA") complaint. The administrative requisites of such claims have been fulfilled. The defendants and the plaintiff are all residents of this District. Jurisdiction exists and this is the proper venue.

Janice L. Roeder ("Roeder") is Plaintiff. Richard A. Battistoni ("Battistoni') and William R. Beam ("Beam") are dentists and Defendants along with their practice Drs. Battistoni and Beam, Ltd. ("LTD").

Summary judgment is sought by Defendants and the undisputed facts are these:

Roeder worked as Front Desk Coordinator for LTD for nearly twelve years. As is true of all employees, Roeder received instruction to follow certain procedures established by management. The contents of one such instruction are disputed. Defendants claim it was a specific warning to Roeder; Roeders says it was a generalized note to all staff and that, until February 25, 2010 at least, she was never "singled out" for poor performance or attitude.

On February 25, 2010, Roeder was called to a meeting with Beam and given a note styled "Performance Discussion." According to Roeder the complaints she voiced to Beam had to do with his hostile demeanor, the bad conduct of a paid consultant, and retaliation for Roeder's complaint to Battistoni about Beam's wife who had taken away access to Roeder's computer so that Beam's wife could look for lamps to be used in redecorating the office. Roeder does not deny that the communication of February 25th addressed legitimate issues of employment. She did sign a written warning on February 25th but did so only because she would be fired, she was told, if she did not.

On November 2, 2010, Roeder met with the office manager and Battistoni who told her she had been a good employee but it was time to part company. In their motion for summary judgment Defendants declare that Battistoni told Roeder that she was terminated due to her repeated failure to comply with office practices, her attitude, and her resistance to changes in the office. Under the applicable rules, I accept, for purposes of this motion only, the Roeder version.

Also at the November 2nd meeting, Battistoni gave Roeder a Voluntary Separation Agreement and told her she had 21 days to look it over and sign it or not. The agreement itself contained this information. Roeder questioned why Battistoni was terminating her in order to create a job for the office manager's son's girlfriend. The office manager denied that this was true. Defendants say that the cover letter attached to the separation agreement advised her to seek legal counsel prior to signing the agreement. Roeder denies the letter which appears in the exhibit was attached or given to her. For purposes of this motion I accept her denial.

Roeder did sign the Agreement on or around November 21. Under its terms she received 6 weeks' salary and 5 days' vacation pay as consideration for the releases in the Agreement. If

the Agreement were not signed she would not have received the payment. What was released were all employment claims including, explicitly, the ADEA claims arising prior to the Agreement. Post agreement conduct claims were not released. Disclosure of the Agreement to anyone other than her attorney was prohibited by the Agreement. The Agreement gave her the right to revoke her release of ADEA claims up to 7 days after signing the Agreement. Roeder did not revoke the release.

The Agreement contained standard language acknowledging a careful reading of the document, understanding the document, signing knowingly and voluntarily and agreeing not to sue for claims related to her employment and to pay for the employer's legal fees if she did sue. The employer undertook the same obligation as to fees.

At the bottom of the signature page Roeder wrote a further clause into the Agreement, that is, she would receive her profit-sharing funds which would be deposited in her IRA.

Roeder does not disagree with any of the facts offered with respect to her execution of the Agreement and its terms but states that she went along with the Agreement while under stress from the termination, which she believed unjustified, at the time in her life (age 60) when future employment (I infer this last clause) might be hard to find. "I only signed it because I was not eligible for the financial consideration that I needed if I did not. I signed it only for the financial reasons....I needed the money."

STANDARD OF REVIEW

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

3

of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). This standard principle of summary judgment is applied with "added rigor" in employment discrimination cases because they often turn on intent and credibility. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999).

To defeat a motion for summary judgment, the non-moving party may not rest on its pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Espo Engineering*, 200 F.3d at 1088.

ANALYSIS

In reaching a decision on this motion for summary judgment, I note that Roeder, despite being *pro se*, has done an adequate job of setting forth the facts as she sees them. I have accepted her version of facts as she observed them and the reasonable inferences that can be drawn from them.

I begin with a few legal issues. First is the claim by Roeder that the Agreement can't be binding against her because she was in financial need. I accept that she was in such need but, for the reasons which follow, I need not decide whether her need rose to the level of economic duress. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 570 (7th Cir. 1995) (discussing duress defense under Illinois law). Second is the claim that she did not understand the Agreement but she offers no examples of what it was she did not understand, she just says it is not in plain English. More importantly, she understood enough to write her own codicil to the

agreement in the same kind of legalese she protests. She offered no other suggested changes in the wording.

Roeder makes a final claim that she was not advised to seek the advice of an attorney before signing the Agreement. The ADEA requires that Roeder should have been advised in writing to consult with an attorney before signing the Agreement. 29 U.S.C. 626(f)(1)(e). It does not require such advice to be in the Agreement. *See id.* (Stating only that, among other things, a waiver of ADEA rights is not knowing and voluntary unless "the individual is advised in writing to consult with an attorney prior to executing the agreement."). Defendants say this appears in a cover letter. Roeder says there was no cover letter. It is a factual dispute and I must assume, for purposes of this motion, that Roeder was not properly advised.

So Roeder's claim survives the initial legal barriers. Where her claim fails is on the merits.

The ADEA prohibits an employer from discriminating against an employee because of her age. 29 U.S.C. § 623(a)(1). An ADEA plaintiff must demonstrate, through either direct or indirect evidence, that her age was the "but-for" cause of the challenged employment action. *Mach v. Will County Sheriff*, 580 F.3d 495 (7th Cir. 2009) (citing *Gross v. FBL Fin. Servs.*, Inc., 129 S. Ct. 2343, 2352 (2009)).

Roeder alleged, both in her complaint and in additional documents sent to the court, that her duties are now performed by a woman, aged twenty-three. But that is the only fact she has to support her claim and it is not enough in light of her own allegations as to the cause of her termination. I accept, for purposes of this motion, that her termination was not justified by her

job performance or by reasonable, if mistaken, beliefs by her employers that she was not performing well.

    I disregard her own allegations which depict her as difficult to supervise and, arguably, an unnecessarily difficult employee. These allegations serve the defendants' purposes more than they do Plaintiff's, but Defendants do not base their argument on this aspect of her admitted conduct so I do not consider them. I also take into account that Plaintiff's words in her papers may be prompted by her understandable sentiments toward her former employer. Some discrimination plaintiffs seem so angry that their words cease to have persuasive effect. In my opinion some of that anger may be a reflection of the events which precipitated the lawsuit rather than a reflection of the character of the plaintiff. Even justified anger can diminish the effectiveness of a witness' demeanor. Since I do not know whether or not this is the case, I do not take into account Roeder's own descriptions of conduct that might reasonably offend a reasonable employer.

    What destroys her case is her own recitation of the facts that motivated her termination. In her own complaint and in additional documents sent to the court, she sets forth her firm belief that she was being terminated "in order to create a job for [the office manager's] son's girlfriend." She attaches a Facebook page to the submission - the page belonging to her replacement. On the copy of the page she identifies the person in this way: "This is the person who was hired to replace me–engaged to the office manager's son." And it is repeated lower down the page as "This is the person who was hired to replace me–engaged to the office manager's Son–23 years old." In simple terms Roeder has, in her own statement of facts, informed this court that the reason a sixty-year-old employee was replaced by a twenty-three-year

-old employee was the younger woman's personal affiliation with a manager of the employer and not Roeder's age.

There is no federal law which prohibits firing someone to make room for a replacement who secures the job by virtue of nepotism or personal favoritism.

One last issue requires resolution. Defendants ask for reimbursement of their legal fees accrued in defending this case. Under the Agreement they are entitled to this but the validity of the Agreement remains disputed. Since the dispute is not resolved, I deny the request to award fees pursuant to the Agreement.

CONCLUSION

Defendants' motion for summary judgment is granted. Defendants' motion for attorneys' fees is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: February 15, 2012